UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
STEPHANIE SULLIVAN,

                Plaintiff,                CIVIL ACTION NO.

    -against-

                                            COMPLAINT

REALIZATION SERVICES, INC. and BARRY L. KASOFF,

                Defendants.
-------------------------------------------------------------------------------X

        Plaintiff Stephanie Sullivan ("Plaintiff"), by her attorneys, Katz Melinger PLLC, complaining of the defendants, Realization Services, Inc. ("RSI") and Barry L. Kasoff ("Kasoff") (collectively, "Defendants"), respectfully alleges as follows:

## I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the New York Labor Law, §§ 190 *et seq.* and 650 *et seq.,* and 12 NYCRR 142-2.14 ("NYLL"); and the New York State Executive Law, Human Rights Law, § 290 *et seq.* ("NYSHRL"). [1]

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3. This Court has supplemental jurisdiction over the claims arising under the NYLL and NYSHRL pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

---

[1] On, August 23, 2018, Plaintiff filed a formal administrative complaint with the Equal Employment Opportunity Commission. She will move to amend the herein Complaint to add claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. upon receipt of a Right to Sue Letter.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiff, within this judicial district.

## II. Parties

6. Plaintiff Stephanie Sullivan is an individual residing in the state of Connecticut.

7. At all relevant times, Plaintiff was a covered employee within the meaning of the FLSA, NYLL, and NYSHRL.

8. Defendant RSI is incorporated in the State of New York with its principal place of business located at 124 David's Hill Road, Bedford Hills, New York 10507.

9. At all relevant times, Defendant RSI has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual revenue over $500,000.00.

10. RSI is a covered employer within the meaning of the FLSA, NYLL, and NYSHRL, and at all relevant times employed Plaintiff.

11. At all relevant times, Defendant Kasoff has been the Chief Executive Officer and President of RSI.

12. At all relevant times, Kasoff was and still is a senior management level employee of RSI who exercised significant control over the company's operations and had the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.

13. The acts of RSI charged in this Complaint were authorized, directed, or accomplished by Defendant Kasoff individually or jointly, by himself or his agents, officers, employees, or representatives, while actively engaged in the management of RSI's business.

14. All Defendants are subject to suit under the statutes alleged above.

### IV. Factual Allegations

15. Defendant RSI is a full service strategic consulting firm in New York specializing in turnaround management and value enhancement for companies.

16. Plaintiff Sullivan was employed with RSI as a Personal and Executive Assistant to Defendant Kasoff from March 1, 2017 to May 9, 2018.

17. Sullivan was supervised throughout her employment by Kasoff and by Daniela Kovatsch, RSI's executive vice president.

### Unpaid Overtime

18. Sullivan's job duties consisted of scheduling meetings and travel arrangements, running personal errands for Kasoff, and other administrative tasks relating to his family, pets, and personal affairs.

19. Sullivan's primary job duties did not require her to exercise independent discretion or judgment with respect to matters of significance.

20. As a result, Sullivan was a non-exempt employee who was entitled to overtime compensation for all hours worked over forty.

21. Throughout her employment, Sullivan regularly worked office hours five days per week, Monday through Friday, from 8:30 a.m. to 6:00 p.m. or 7:00 p.m., for approximately 47.5 to 52.5 hours worked per week.

22. Sullivan also regularly worked from home in the mornings and evenings and on weekends, with Mr. Kasoff's knowledge and at his request, for approximately an additional 10 to 15 hours per week.

23. Ms. Sullivan thus worked a total of approximately 57.5 to 67.5 hours per week.

24. Although Sullivan was a non-exempt employee who regularly worked more than forty hours per week, she was not paid one and one-half times her regular rate of pay for every hour worked in excess of forty per week.

25. Instead, Defendants paid Sullivan a fixed annual salary of $85,000, without any payments for hours worked in excess of forty per week.

26. Other than during the last two weeks of Sullivan's employment, Defendants did not track or otherwise record the hours Sullivan worked.

27. Sullivan also did not receive a payroll notice at the time of hire containing her rates of pay and the designated payday, or any other information required by NYLL § 195(1).

28. Defendants further failed to furnish Sullivan with each wage payment, an accurate statement listing her regular and overtime rate of pay, the number of regular and overtime hours worked, gross wages, deductions, and anything otherwise required by NYLL § 195(3).

**Harassment and Retaliation**

29. During her employment, Sullivan was subjected to ongoing sexual harassment by Kasoff.

30. For instance, Kasoff would frequently comment on Sullivan's appearance and ogle her in an inappropriate manner.

31. Kasoff told Sullivan on at least one occasion that both his daughter and his former wife suggested that he date Sullivan, and implied to Sullivan that he would like to do so.

32. On other occasions, Kasoff changed his clothing in front of Sullivan.

33. Sullivan was disturbed by Kasoff's inappropriate behavior and ignored his advances.

34. In December of 2017, approximately one week before Sullivan was to receive her annual bonus, Kasoff explicitly asked Sullivan on a date. Concerned about his reaction, Sullivan gave a non-committal response, to which Kasoff replied that she should think about it.

35. The following day, Kasoff approached Sullivan and again asked if she would go on a date with him. Sullivan then stated explicitly that she wished to keep their relationship professional.

36. Kasoff responded to Sullivan's statement by suggesting that they go on a trip together, which suggestion Sullivan declined.

37. Kasoff then took a hold of Sullivan's elbow, leaned down, and kissed Sullivan's face.

38. One day later, as Kasoff was en route to Florida, he called Sullivan and stated "You could come with me to Florida, but I'd probably jump your bones."

39. Kasoff's harassing actions towards Sullivan subsequently worsened and continued for the remainder of her employment.

40. Such harassment consisted of, *inter alia*, Kasoff requesting that Sullivan accompany him to a "singles" event. Sullivan felt pressured to attend the event by Kasoff, who was her direct supervisor and had the authority to terminate her employment.

41. While at the "singles" event, Kasoff, made sexual comments about her appearance to. Sullivan, including telling her that she was more attractive than the other women there, and that a gentleman who approached to pay her a compliment "just wanted to get in [her] pants".

42. Sullivan grew increasingly uncomfortable around Kasoff, and attempted to speak with Kovatsch about the harassment.

43. Kovatsch told Sullivan that she was aware that Kasoff's ex-wife and daughter had suggested Kasoff date Sullivan, and that Kasoff had also asked his previous assistant out on a date.

44. Kovatsch additionally stated during that conversation, and in subsequent conversations, that such behavior is common in the workplace, and that Sullivan should quit if she were unhappy or uncomfortable.

45. From time to time thereafter, Kovatsch would spontaneously tell Sullivan of women who had left their jobs or marriages because they were unhappy.

46. On January 28, 2018, Sullivan requested a meeting with Kasoff and Kovatsch to discuss Kasoff's behavior towards her.

47. On January 29, 2018, Sullivan met with Kasoff and Kovatsch and stated that she felt uncomfortable being alone with Kasoff due to his inappropriate statements and behavior.

48. During the meeting, which Sullivan recorded, Kasoff admits telling Sullivan that he would "jump [her] bones" and that such comment was inappropriate.

49. Kasoff, dismissive of Sullivan's complaint and emotional distress, advised Sullivan to "get over" her discomfort with him.

50. However, following Sullivan's rejection of Kasoff's sexual advances and complaints about his behavior, including at the meeting on January 29, 2018, Kasoff became hostile towards Sullivan to a degree that altered her working environment.

51. Kasoff began treating Sullivan like his servant and personal housekeeper and insisting she do menial tasks such as clean his work shoes and straighten his sock drawer.

52. Kasoff and Kovatsch subsequently told Sullivan on numerous occasions that she appeared unhappy in the job, and suggested that she seek other employment.

53. On April 27, 2018, Kasoff and Kovatsch called a meeting with Sullivan and instructed her that, as seemed unhappy in her position, they would transition her responsibilities to another employee and that she should seek other employment. Sullivan responded that she was happy with her job and wished to stay so long as Kasoff's inappropriate behavior ceased.

54. On May 4, 2018, Sullivan was notified that her last day of employment would be May 9, 2018.

55. At that time, Kasoff stated that, due to Sullivan's complaints about his behavior, it was clear that either he or Sullivan would need to leave RSI and that, as he was the head of the company, she would be the one to lose her employment.

56. No reason was given for the termination of Sullivan's employment other than that she appeared unhappy with her job after having rejected Kasoff's sexual advances and having complained of Kasoff's behavior.

## AS AND FOR A FIRST CAUSE OF ACTION
(Overtime Violations under the FLSA)

57. Plaintiff repeats and realleges all prior allegations set forth above.

58. Pursuant to the applicable provisions of FLSA 29 U.S.C. § 207, Plaintiff was entitled to overtime compensation of one and one-half times her regular hourly rate for all hours worked in excess of forty hours per week.

59. Throughout the relevant time period, Plaintiff regularly worked in excess of forty hours per week.

60. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half times her regular rate for each hour worked in excess of forty hours in a workweek.

61. As a result of Defendants' violations of the law and failure to pay Plaintiff the required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

62. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

63. Judgment should be entered in favor of Plaintiff and against Defendants on the First Cause of Action in the amount of her respective unpaid overtime wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
(Overtime Violations under the NYLL)

64. Plaintiff repeats and realleges all prior allegations set forth above.

65. Pursuant to the applicable provisions of NYLL § 650, *et seq.*, and 12 NYCRR § 142-2.2, Plaintiff was entitled to overtime compensation of one and one-half times her regular hourly rate for all hours worked in excess of forty hours per week.

66. Plaintiff regularly worked in excess of forty hours per week during her employment with Defendants.

67. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half times her regular rate for each hour worked in excess of forty hours in a workweek.

68. As a result of Defendants' violations of the law and failure to pay Plaintiff the required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

69. As Defendants did not have a good faith basis to believe that her failure to pay overtime wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

70. Judgment should be entered in favor of Plaintiff, and against Defendants on the Second Cause of Action in the amount of her respective unpaid overtime wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
(Failure to Provide Payroll Notices Under the NYLL)

71. Plaintiff repeats and realleges all prior allegations.

72. Throughout the relevant time period, Defendants failed to furnish to Plaintiff a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; and anything otherwise required by NYLL § 195(1).

73. As Defendants failed to provide Plaintiff with payroll notices as required by NYLL § 195(1), she is entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Failure to Provide Wage Statements Under the NYLL)

74. Plaintiff repeats and realleges all prior allegations.

75. Throughout the relevant time period, Defendants failed to furnish to Plaintiff, with each wage payment, a statement listing: rate or rates of pay and basis thereof; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

76. As Defendants failed to provide Plaintiff with payroll notices as required by NYLL § 195(3), she is entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

### AS AND FOR A FIFTH CAUSE OF ACTION
*(New York State Executive Law, Human Rights Law, § 290 et seq.)*
(Sexual Harassment)

77. Plaintiff repeats and realleges all prior allegations.

78. The aforementioned conduct by Defendants is without just and reasonable cause and constitutes an unlawful discriminatory practice relating to employment in violation of the NYSHRL.

79. Judgment should be entered in favor of Plaintiff and against Defendants on the Fifth Cause of Action for all compensatory, emotional, physical, and liquidated damages, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action and any other damages permitted by law in an amount to be determined at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
*(New York State Executive Law, Human Rights Law, § 290 et seq.)*
(Gender-Based Discrimination)

80. Plaintiff repeats and realleges all prior allegations.

81. Defendants' disparate and unlawful treatment of Plaintiff on the basis of her gender was in violation of the NYSHRL.

82. Judgment should be entered in favor of Plaintiff and against Defendant on the Sixth Cause of Action for all compensatory, emotional, physical, and liquidated damages, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action and any other damages permitted by law in an amount to be determined at trial.

### AS AND FOR A SEVENTH CAUSE OF ACTION
*(New York State Executive Law, Human Rights Law, § 290 et seq.)*
(Retaliation)

83. Plaintiff repeats and realleges all prior allegations.

84. Defendants' retaliatory treatment of Plaintiff was in violation of the NYSHRL.

85. Judgment should be entered in favor of Plaintiff and against Defendants on the Seventh Cause of Action for all compensatory, emotional, physical, and liquidated damages, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action and any other damages permitted by law in an amount to be determined at trial.

**WHEREFORE** Plaintiff prays for relief as follows:

a) on the First Cause of Action, for all overtime wages due to Plaintiff, an additional award of one hundred percent of all wages due, all reasonable attorneys' fees, costs and interest, in an amount to be determined by this Court;

b) on the Second Cause of Action for all overtime wages due, an additional award of one hundred percent of all wages due to Plaintiff, all reasonable attorneys' fees, costs and interest, in an amount to be determined by this Court;

c) on the Third Cause of Action for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs;

d) on the Fourth Cause of Action for liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs;

e) on the Fifth, Sixth, and Seventh Causes of Action under the NYSHRL, in favor of Plaintiff and against Defendant for all compensatory, emotional and physical damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, and any other damages permitted by law in an amount to be determined at trial;

f) Interest;

g) Costs and disbursements; and

h) Such other and further relief as is just and proper.

Dated: New York, New York
August 29, 2018

    */Nicole Grunfeld*
Nicole Grunfeld
Attorney for Plaintiff
Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
Telephone: 212.460.0047
Facsimile: 212.428.6811
ndgrunfeld@katzmelinger.com